Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE-MARIE DEHERRERA, *individually and on behalf of all those similarly situated*, <br><br> *Plaintiff*, <br><br> *v.* <br><br> REED'S INC., *a Delaware corporation,* <br><br> *Defendant.* <br> _____ | No. 5:26-cv-00572-SSS-ACCV <br><br> **OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT** <br><br> Hearing Date: May 15, 2026 <br> Hearing Time: 2:00 p.m. <br> Dept. 2 <br> Hon. Sunshine S. Sykes |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................iv

INTRODUCTION...........................................................................1

FACTS AND PROCEEDINGS ......................................................3

STANDARD OF REVIEW .............................................................3

ARGUMENT .................................................................................4

**I.    DISMISSAL UNDER RULE 12(B)(1) WOULD
        BE LEGAL ERROR..........................................................4**

    A.    Reed's Has Not Demonstrated that DeHerrera's
        Allegations Are Frivolous Or Made Solely to
        Manufacture Jurisdiction. ..............................................5

    B.    The Declarations are "Sham Declarations" That
        Contradict Defendant's Own Pre-Litigation Statements..6

    C.    The Jurisdictional and Merits Issues Are
        Inextricably Intertwined. ................................................8

    D.    Even If Credited, the Declarations Do Not Establish That
        The Product DeHerrera Bought Was Erythritol-Free.......9

    E.    Plaintiff Should be Granted Discovery..........................12

**II.   PLAINTIFF HAS PLAUSIBLY ALLEGED THAT
        ARTIFICIAL CITRIC ACID IS USED IN THE
        PRODUCTS AS A PRESERVATIVE. ..............................13**

    A.    Plaintiff's Citric Acid Allegations Are
        Product-Specific and Adequately Supported. ................14

    B.    The USDA and FDA Regulations Reed's Cites to
        Do Not "Establish" Anything About the Products.........16

    C.    Whether Citric Acid Functions As A Preservative
        Is a Fact Issue That Cannot Be Determined
        On the Pleadings. .........................................................17

**III.  PLAINTIFF'S UCL, FAL, UNJUST ENRICHMENT,
        AND BREACH OF WARRANTY CLAIMS ARE ALSO
        PLAUSIBLY ALLEGED. ..................................................18**

**IV.   PLAINTIFF HAS ADEQUATELY ALLEGED
        ENTITLEMENT TO EQUITABLE RESTITUTION. .......19**

-ii-

A.    *Sonner* Does Not Address Pleading Burdens Or Preclude Alternative Pleading of Inadequate Legal Remedies. ...............................................................19

B.    Plaintiff Has Adequately Pleaded the Factual Bases for Equitable Restitution.................................................21

CONCLUSION ...........................................................................................22

-iii-

# TABLE OF AUTHORITIES

## Cases

*Aki v. Univ. of California Lawrence Berkeley Nat'l Lab'y*,
  74 F.Supp.3d 1163 (N.D. Cal. 2014) ................................................................... 8

*Am. Life Ins. Co. v. Stewart*,
  300 U.S. 203 (1937) ........................................................................................ 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 4, 15

*Barmakszian v. State Farm Mut. Auto. Ins. Co.*,
  No. CV 23-10519-JFW(JCX), 2024 WL 4868271 (C.D. Cal. 2024) .................. 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 2, 4

*Bell v. Hood,*
  327 U.S. 678 (1946) .......................................................................................... 5

*Belyea v. GreenSky, Inc.*,
  No. 3:20-CV-01693-JSC, 2023 WL 8701311 (N.D. Cal. 2023) ...................... 22

*Bowen v. Energizer Holdings, Inc.*,
  118 F.4th 1134 (9th Cir. 2024) .......................................................................... 9

*Century Sur. Co. v. Master Design Drywall, Inc.,*
  No. 09CV0280-LAB (AJB), 2009 WL 3425326 (S.D. Cal. 2009) .................. 12

*Chebul v. Tuft & Needle, LLC*,
  No. 2:24-CV-02707-JLS-MAR, 2024 WL 5257021 (C.D. Cal. 2024) ............. 20

*Coleman v. Mondelez Int'l Inc.*,
  554 F. Supp. 3d 1055 (C.D. Cal. 2021) ........................................................... 21

*Cortez v. Post Consumer Brands, LLC*,
  No. 2:25-CV-02321-DJC-JDP, 2026 WL 657631 (E.D. Cal. 2026) ................ 15

*Davidson v. Kimberley-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ........................................................................... 11

*Durnford v. MusclePharm Corp.*,
  907 F.3d 595 (9th Cir. 2018) ........................................................................... 15

*Fried v. Snapple Beverage Corp.*,
  No. 24-cv-653-DMS-DDL, 2024 WL 4479877 (S.D. Cal. 2024) .................... 15

-iv-

*Gitson v. Trader Joe's Co.*,
  No. 13-cv-01333-WHO, 2014 WL 1048640 (N.D. Cal. 2014) ......................... 18

*Guzman v. Polaris Industries Inc.*,
  49 F.4th 1308 (9th Cir. 2022) ........................................................... 20

*Haas v. Travelex Ins. Servs. Inc.*,
  555 F. Supp. 3d 970 (C.D. Cal. 2021) ................................................. 19

*HRPT Props. Tr. v. Lingle*,
  676 F.Supp.2d 1036 (D. Haw. 2009) ................................................... 12

*Hu v. Herr Foods, Inc.*,
  251 F.Supp.3d 813 (E.D. Pa. 2017) .................................................... 18

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020) ................................................. 11

*In re Natera Prenatal Testing Litig.*,
  664 F. Supp. 3d 995 (N.D. Cal. 2023) ................................................. 22

*Ivie v. Kraft Foods Glob., Inc.*,
  No. 12-cv-02554-RMW, 2013 WL 685372 (N.D. Cal. 2013) ......................... 18

*Johnson-Jack v. Health-Ade LLC*,
  587 F. Supp. 3d 957 (N.D. Cal. 2022) ................................................. 20

*Lomeli v. Jackson Hewitt, Inc.*,
  No. 2:17-CV-02899-ODW, 2018 WL 1010268 (C.D. Cal. 2018) .................... 19

*Lozano v. Walmart, Inc.*,
  No. 23-cv-04500-SPG, 2024 WL 412606 (C.D. Cal. 2024) ........................... 18

*Meltzer v. Mazda Motor Co. of Am., Inc.*,
  779 F. Supp. 3d 1120 (C.D. Cal. 2025) ........................................... 19, 22

*Morrison v. Amway Corp.*,
  323 F.3d 920 (11th Cir. 2003) ............................................................ 5

*Moss v. U.S. Secret Service*,
  572 F.3d 962 (9th Cir. 2009) .............................................................. 4

*Murphy v. Olly Pub. Benefit Corp.*,
  651 F. Supp. 3d 1111 (N.D. Cal. 2023) ........................................ 19, 21, 22

*North Star Int'l v. Ariz. Corp. Comm'n*,
  720 F.2d 578 (9th Cir. 1983) ............................................................ 12

*Pickard v. Amazon.com, Inc.*,
  No. 5:20-CV-01448, 2023 WL 8191903 (W.D. La. 2023) ............................ 10

-v-

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

*Pitkin v. State Farm Gen. Ins. Co.*,
  No. 23-CV-00924-WHO, 2023 WL 11990316 (N.D. Cal. 2023) .................... 20

*Ringler v. J.M. Smucker Co.*,
  783 F. Supp. 3d 1229 (C.D. Cal. 2025) ........................................................... 15

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004)................................................................. passim

*Scheibe v. Fit Foods Dist., Inc.*,
  No.: 23-CV-220 JLS (AHG), 2023 WL 7434964 (S.D. Cal. 2023) ................. 20

*Shahinian v. IQBAR, Inc.*,
  No. 8:25-CV-01112-JLS-PD, 2026 WL 413583 (C.D. Cal. 2026) .............. 2, 21

*Snapp v. United Transp. Union*,
  889 F.3d 1088 (9th Cir. 2018)............................................................................ 7

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)............................................................... 19, 20, 22

*Squeo v. Campbell Soup Co.*,
  No. 24-CV-02235-SVK, 2024 WL 4557680 (N.D. Cal. 2024).................... 15, 17

*St. Clair v. City of Chico,*
  880 F.2d 199 (9th Cir. 1989)............................................................................ 12

*Sun Valley Gas., Inc. v. Ernst Enters.,*
  711 F.2d 138 (9th Cir. 1983)............................................................... 5, 8, 13

*Tarzian v. Kraft*,
  No. 18 C 7148, 2019 WL 5064732 (N.D. Ill. 2019)........................................ 15

*Taylor v. Walmart, Inc.*,
  789 F. Supp. 3d 774 (C.D. Cal. 2025) .............................................................. 15

*Thornhill Publ'g Co. v. Gen. Tel. Co.*,
  594 F.2d 730 (9th Cir. 1979)......................................................................... 5, 9

*Vales v. Pierre Fabre Dermo-Cosmetique USA, Inc.*,
  No. 25-CV-10523-BLF, 2026 WL 974518 (N.D. Cal. 2026) ........................... 18

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008)........................................................................... 17

*Yeager v. Bowlin*,
  693 F.3d 1076 (9th Cir. 2012)............................................................................ 7

*Yurok Tribe v. Dowd*,
  No. 16-CV-02471-RMI, 2022 WL 2441564 (N.D. Cal. 2022) .......................... 9

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

*Zuchowski v. SFC Global Supply Chain, Inc.*,
No. 20-cv-10171-ALC, 2022 WL 3586716 (S.D.N.Y. 2022) ........................... 18

**Statutes**

21 U.S.C. § 321(m) ...................................................................................... 7

21 U.S.C. § 331(a) ....................................................................................... 6

21 U.S.C. § 333 ............................................................................................ 7

21 U.S.C. § 343 ............................................................................................ 6

Cal. Health & Safety Code § 110100 ......................................................... 7

Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ............... 3, 19, 20

False Advertising Law, Bus. & Profs. Code §17500, *et seq.* ................... 3

Unfair Competition Law, Bus. & Profs. Code §17200, *et seq.* ................ 3, 19

**Regulations**

21 C.F.R. § 184.1033(a) ............................................................................. 16

7 C.F.R. § 205.605(a)(1) ............................................................................ 16

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................... 2, 4, 5

Fed. R. Civ. P. 12(b)(6) ............................................................................. 3

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

## INTRODUCTION

Plaintiff Anne-Marie DeHerrera alleges that the Zero Sugar Real Ginger Ale (the "Products"), manufactured and sold by Defendant Reed's, Inc. are misbranded and deceive reasonable consumers. They do this because the Products claim on their front and back labels to have only "Natural Ingredients," and to contain "Nothing Artificial" and "No Artificial Preservatives." Compl. ¶ 15. These label claims are false and misleading because the Products contain both erythritol (an artificial sweetener) and citric acid (an artificial preservative). Courts across the country have found such claims to be plausibly pleaded. *See, e.g.*, *Viggiano v. Johnson & Johnson*, No. CV1407250DMGMRWX, 2015 WL 12860480, at *3 (C.D. Cal. 2015) (erythritol); *Carbine v. Target Corp.,* No. CV 24-03721-MWF (AJRX), 2025 WL 501829, at *3 (C.D. Cal. 2025) (citric acid).

Defendant moves to dismiss the entire Complaint, on astonishing grounds. Reed's **_admits_** that for nearly two years it sold misbranded foods with false labeling that inaccurately described the ingredients in its Products. But because the Products were not misbranded in quite the way Plaintiff alleges, Reed's maintains, her claims related to erythritol must be dismissed.

This blithe admission to intentionally violating federal and state law raises some serious issues about Defendant's credibility. But this Court need not make credibility findings to reject Defendant's motion. Prior to dismissing under Rule 12(b)(1) on a "factual jurisdictional attack," a defendant must show that plaintiff's claims are "immaterial," "made solely for the purpose of obtaining federal jurisdiction," or "wholly insubstantial and frivolous." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir. 2004). Reed's has not. By its own admission, the company sold Products until at least May 2025 that state that the drinks contain erythritol. Defendant's post-litigation statement to the contrary—now that the company wants to disclaim the use of erythritol—fails under the "sham

-1-
OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

declaration" doctrine, which precludes the use of sworn declarations to explain away prior contradictory statements. The Court cannot resolve this discrepancy on the pleadings, even under Rule 12(b)(1).

Then, Defendant's factual jurisdictional attack fails for the independent reason that the jurisdictional and merits issues raised by this motion are inextricably intertwined. Reed's argument is that there is no standing because the labels are accurate—*i.e.*, there is no jurisdiction to determine whether the labels are inaccurate *because* the labels are accurate. But the Ninth Circuit has repeatedly warned that "[j]urisdictional dismissals" are legal error where "'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Safe Air*, 373 F.3d at 1039. This case is the classic example of an "intertwined" question.

Otherwise, Defendant's arguments are makeweight, a reprise of arguments that courts in this state have repeatedly rejected. It argues that DeHerrera has not plausibly alleged either that the citric acid used in the Products is artificial, or that it is used as a preservative. These arguments have been rejected by courts throughout this state. *See, e.g.*, *Carbine,* 2025 WL 501829 at *3. It argues that the claim for equitable restitution fails because DeHerrera has adequate legal remedies. But this ignores the viability of alternative pleading under Rule 8. *See, e.g.*, *Shahinian v. IQBar, Inc.*, No. 8:25-CV-01112-JLS-PD, 2026 WL 413583, at *2 (C.D. Cal. 2026). And Reed's acknowledges that its first-to-file argument rises or falls with its jurisdictional attack—which fails.

Reed's offers no basis for dismissal. Plaintiff's allegations readily "nudge[] [DeHerrera's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At minimum, if the Court were to

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

find any deficiency, leave to amend should be freely granted. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

## FACTS AND PROCEEDINGS

The Products feature claims on the front and back labels to have "Natural Ingredients," and to contain "Nothing Artificial" and "No Artificial Preservatives." Compl. ¶ 15. DeHerrera purchased the Products on or about December 23, 2024 from Amazon.com "and reviewed and relied on the label statements described above in making her purchase." *Id*. ¶¶ 1, 17.

These label claims are false. "The Products contain both erythritol, an artificial sweetener, and citric acid, an artificial preservative." *Id*. ¶ 16. The Complaint describes in detail the process by which "[v]irtually all citric acid used in U.S. commercial food—including that used in the Products"—is "manufactured from industrial feedstocks using fermentation and chemical processing," as well as its use as a preservative in the Products. *Id*. ¶¶ 18-25. Likewise, the Complaint describes in detail the "multistep process" by which erythritol "is manufactured through industrial fermentation and chemical processing—from processed corn/wheat starch, fermented with engineered microbes, and refined into a crystalline sweetener." *Id*. ¶¶ 26-30. DeHerrera and Class members have suffered "economic injury due to Defendant's misrepresentations." *Id*. ¶ 45.

DeHerrera brings consumer deception claims on behalf of a California class under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.; the Unfair Competition Law ("UCL"), Bus. & Profs. Code §17200, *et seq*.; the False Advertising Law ("FAL"), Bus. & Profs. Code §17500, *et seq*.; as well as claims for unjust enrichment and breach of an express warranty.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint need not include all of the facts necessary to carry the plaintiff's burden, or detailed factual allegations. *Bell Atl.*, 550 U.S. at 555.

## ARGUMENT

## I.    DISMISSAL UNDER RULE 12(b)(1) WOULD BE LEGAL ERROR.

Plaintiff plausibly alleges Article III injury. She purchased a product labeled as containing erythritol—an artificial sweetener—and would not have purchased it, or would have paid less, absent that representation. Reed's assertion that it ceased using erythritol in July 2023 does not defeat standing where it admits continued use of erythritol labeling through at least May 2025, making it plausible that such products remained in circulation at the time of Plaintiff's purchase. At minimum, these allegations present a non-frivolous factual dispute that cannot be resolved on a Rule 12(b)(1) motion.

This is not a jurisdictional dispute. It is a dressed-up merits dispute. And where a defendant's jurisdictional attack "is intertwined with the merits," the Court cannot resolve disputed factual issues under Rule 12(b)(1). *Safe Air*, 373 F.3d at 1039. Nor does Reed's even attempt to show that Plaintiff's allegations are frivolous or made merely to manufacture jurisdiction, as the Ninth Circuit requires. Granting dismissal under these circumstances would be legal error and an abuse of discretion.

### A.    Reed's Has Not Demonstrated that DeHerrera's Allegations Are Frivolous Or Made Solely to Manufacture Jurisdiction.

Motions under Rule 12(b)(1) to dismiss for lack of subject-matter jurisdiction fall into two categories: facial and factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A Rule 12(b)(1) motion is "factual" when "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

Here, Reed's acknowledges (at Memo. 10) that its jurisdictional attack is factual, relying as it does on "extrinsic evidence and [because it] did not assert lack of subject matter jurisdiction solely on the basis of the pleadings.'" *Id*. (quoting *Morrison v. Amway Corp.,* 323 F.3d 920, 924 n. 5 (11th Cir. 2003)). Reed's argues that Plaintiff suffered no injury and has no claim because there is no erythritol in its Products, despite what its labels say.

But the Ninth Circuit has held that factual jurisdictional dismissals "are exceptional, and must satisfy the requirements specified in *Bell v. Hood,* [327 U.S. 678 (1946)]." *Id*. (citing *Sun Valley Gas., Inc. v. Ernst Enters.,* 711 F.2d 138, 140 (9th Cir. 1983)). In *Bell,* the Supreme Court held that jurisdictional dismissals are only "warranted 'where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous.'" *Id*. (quoting *Bell*, 327 U.S. at 682–83). *See also id*. at 1039-40 ("'[A] motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper only when the allegations of the complaint are frivolous.'") (quoting *Thornhill Publ'g Co. v. Gen. Tel. Co.*, 594 F.2d 730, 734 (9th Cir. 1979)).

As in *Safe Air*, Reed's here has not "argued that [Plaintiff's claims] are 'immaterial,' 'made solely for the purpose of obtaining federal jurisdiction,' or

'wholly insubstantial and frivolous.'" *Id*. at 1040 (quoting *Bell, supra*.). Nor could it do so with any degree of credibility, for several reasons.

**B.     The Declarations are "Sham Declarations" That Contradict Defendant's Own Pre-Litigation Statements.**

To start, the various declarations submitted in support of Defendant's motion contradict plain statements the company acknowledges it made on a federally (and state) mandated ingredients list. The operative fact that Reed's asserts is "undisputed" (*see* Memo. 11) is that the Products do not actually contain erythritol, even though Reed's *admits* that the Products purchased by DeHerrera likely "included erythritol as an ingredient on the label and packaging." Memo. 8. Reed's position depends on asking the Court to disregard the company's own federally mandated ingredient labeling—statements made under a regulatory scheme that imposes civil and criminal liability—and instead credit post-hoc declarations.

When a statement on a federally mandated ingredients list is contradicted by a post-hoc declaration, the Court cannot rely on these declarations to find the contradicted fact to be "undisputed." There is equally credible evidence that these drinks actually ***do*** contain erythritol—evidence supplied by the Defendant's own statements on its own federally mandated labeling.

Statements on a federally mandated ingredients lists are not—as Reed's would have it—no big deal, their accuracy easily discounted in the face of a contradicting declaration. The Federal Food, Drug, and Cosmetic Act (FDCA) prohibits the misbranding of food, *see* 21 U.S.C. § 331(a), and food is deemed misbranded if "its labeling is false or misleading in any particular," *id*. § 343. The distinction between labels on a can and labels on an outer wrapper that Reed's seeks to draw has no legal significance. The statute defines the term "labeling"

-6-

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

broadly to include "all labels and other written, printed, or graphic matter … upon any article ***or any of its containers or wrappers***." *Id*. § 321(m) (emphasis added).

California has incorporated these federal requirements as state law through the Sherman Law. *See* Cal. Health & Safety Code § 110100. And reflecting the importance of accurate food labeling, the FDCA provides not only for civil penalties for misbranding, but also criminal penalties for intentional misbranding. *See* 21 U.S.C. § 333.

Representations in an ingredients list on a food's container are therefore "statements" about what that product contains. Made under force of law and subject to civil and criminal penalties for inaccuracies, such statements have no less legal import than the deposition testimony that is the usual focus of the "sham declaration" rule. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."). Under that rule, a party cannot be afforded relief from a claim as a matter of law when there are "patent inconsistencies in plaintiff's own statements" regarding a material fact issue. *Barmakszian v. State Farm Mut. Auto. Ins. Co.*, No. CV 23-10519-JFW(JCX), 2024 WL 4868271, at *9 (C.D. Cal. 2024) (citing *Yeager, supra*). *See also, e.g., Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018) (relief cannot be granted to corporation as a matter of law "based on an affidavit that conflicts with" a corporation's other statements).

At this stage, the Court need not make credibility determinations or resolve which of Defendant's contradictory statements is accurate. The mere fact of these directly contradictory statements—both offered in contexts where strict accuracy is mandated by law—makes dismissal under Rule 12(b)(1) legal error and an abuse of discretion. *One* of Defendant's contradictory statements (its ingredients list or its Declarations) is a sham; and this Court is currently in no position to credit one

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

over the other just because Reed's would prefer to have this case dismissed now and worry later about potential FDA liability for misbranding.

And while the Ninth Circuit's "sham declaration" rule usually applies to efforts to *manufacture* a disputed fact issue, it is no less inapplicable to Defendant's attempt to *explain away* a material fact issue. In both instances, the party seeks relief as a matter of law based on post-hoc declarations that contradict its pre-litigation or other statements. Nor can the contradiction be dismissed as a "minor discrepancy." *Aki v. Univ. of California Lawrence Berkeley Nat'l Lab'y*, 74 F.Supp.3d 1163, 1173 (N.D. Cal. 2014). Defendant's post-hoc declarations directly contradict statements on its federally mandated food labeling, where inaccuracies carry civil and even criminal penalties.

Discovery will sort out the mess of Defendant's various statements. But given the company's contradictions, DeHerrera's allegations are plainly not "immaterial," "made solely for the purpose of obtaining federal jurisdiction," or "wholly insubstantial and frivolous." *Safe Air*, 373 F.3d at 1040. As such, it would be plain error and an abuse of discretion for this Court to dismiss under Rule 12(b)(1). *See id*. (citing *Sun Valley,* 711 F.2d at 139).

## C. The Jurisdictional and Merits Issues Are Inextricably Intertwined.

Then, dismissal under Rule 12(b)(1) would also be error because the jurisdictional and merits issues are inextricably intertwined. "Jurisdictional dismissals" are inappropriate where "'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Safe Air*, 373 F.3d at 1039 (quoting *Sun Valley*, 711 F.2d at 140).

That is exactly the situation here: Reed's argues that DeHerrera lacks standing because the Products do not contain erythritol and therefore have no

-8-

artificial ingredients. Without erythritol, Reed's reasons, there is no injury-in-fact and therefore no standing. Memo. 5.

Putting aside the fact that Reed's actually admits that the Products' labels *are* inaccurate, here the jurisdictional issue (is there injury-in-fact giving rise to Article III standing?) is inextricably intertwined with the underlying merits issue (does the Products' label present the facts about their ingredients accurately?).

In that situation, a district court commits reversible error if it dismisses under Rule 12(b)(1). *See Safe Air*, 373 F.3d at 1040 (citing *Sun Valley*, 711 F.2d at 139). *See also, e.g.*, *Bowen v. Energizer Holdings, Inc.,* 118 F.4th 1134, 1145 (9th Cir. 2024) (where "allegations relating to standing are not 'separable from the merits of the case,'" district court is not "free to 'resolv[e] factual disputes'"); *Thornhill Publ'g*, 594 F.2d at 734 ("[W]hen a statute provides the basis for both the subject matter jurisdiction … and the plaintiffs' substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper only when the allegations of the complaint are frivolous."); *Yurok Tribe v. Dowd*, No. 16-CV-02471-RMI, 2022 WL 2441564, at *4 (N.D. Cal. 2022) (denying motion to dismiss where movant's "argument to the effect that there is no jurisdiction under the HYSA to determine whether his fishing violated the HYSA *because* he did not violate the HYSA represents exactly such an intermeshing" between the jurisdictional and merits issues).

This is not a Rule 12(b)(1) motion. It is functionally a Rule 12(b)(6) motion. Dismissal on the basis of Defendant's post-hoc declarations would be legal error and an abuse of discretion. *See Safe Air*, 373 F.3d at 1040.

**D.  Even If Credited, the Declarations Do Not Establish That The Product DeHerrera Bought Was Erythritol-Free.**

Dismissal on the basis of Defendant's post-hoc declarations would be especially inappropriate in this case, because even taking the declarations at face

-9-

value—which they should not be—they do not actually establish that the Product that DeHerrera bought in December 2024 was erythritol-free.

Reed's argues that drinks bought on Amazon in December 2024 "would have included erythritol as an ingredient on the label and packaging even if it did not have erythritol in the product itself." Memo. 9. But taking the declarations at face value, they admit that the Products did contain erythritol through July 2023. *See* Conces Decl. ¶ 8. And nothing in these declarations establishes that a Product purchased from Amazon.com in December 2024 could not have been manufactured in July 2023 or before—even if it is true that (as Reed's contends) it stopped shipping drinks with erythritol to Amazon in July 2023. *See* McCurdy Decl. ¶ 11.

What Reed's is describing is Amazon's "Fulfillment By Amazon" program, where third-party sellers "send inventory to Amazon's fulfillment centers for storage and subsequent delivery." *Pickard v. Amazon.com, Inc.*, No. 5:20-CV-01448, 2023 WL 8191903, at *2 (W.D. La. 2023). "[W]hen a consumer places an order for a third-party seller's product, Amazon simply retrieves the pre-packaged product from its warehouse, places the product in a shipping container or applies a shipping label to the product's box, and delivers or arranges delivery of the product to the buyer." *Id*.

But Reed's has not shown that a shelf-stable product like canned ginger ales could not sit in the Amazon warehouse from July 2023 to December 2024 before being sold and shipped. Defendant's motion rests on an unspoken assumption: that the 17 months between July 2023 and December 2024 is "too long" for a product to sit unsold in the Amazon warehouse. But Reed's presents no evidence in support of that assumption, and certainly none in the declarations.

To the contrary, there is evidence suggesting that Amazon warehouse "sit" times can extend for months. The McCurdy Declaration (again, taking it at face

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

value, which is not required) states that Reed's used and shipped packaging that falsely listed erythritol as an ingredient in the ginger ales from July 2023 through May 2025. *See* McCurdy Decl. ¶ 8.

After receiving Defendant's motion, the undersigned went on Amazon.com and ordered the Products for delivery to his office. Weller Decl. ¶¶ 3-6. That delivery occurred on April 3, 2026—no less than 11 months after Reed's purports to have ceased shipping Products with labels falsely stating that the drinks contain erythritol. And yet the Products received by the undersigned clearly list erythritol as an ingredient on the outer packaging. *Id*. If 11 months is not too long for Products to sit in an Amazon warehouse awaiting sale and shipping, it is not implausible that Plaintiff could have purchased Products containing erythritol 17 months after Reed's claims it stopped using the ingredient.[1]

This Court is not in a position to resolve this issue on the basis of Defendant's assumptions and speculation. Again, the critical point is that here, the jurisdictional and merits issues are inextricably intertwined, and Reed's has not shown that Plaintiff's allegations are frivolous, immaterial, or made solely to manufacture federal jurisdiction. As such, dismissal under Rule 12(b)(1) would be a plain abuse of discretion. *See Safe Air*, 373 F.3d at 1040.[2]

---

[1] Reed's adverts repeatedly to the fact that Amazon transactions were processed by third-party resellers. This is irrelevant. The CLRA applies to sales through third parties (and even unauthorized resellers) no less than to sales directly by a manufacturer. *See, e.g., In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.,* 497 F. Supp. 3d 552, 641 (N.D. Cal. 2020).

[2] Defendant's argument that the claims for injunctive relief are moot also relies on the Court crediting the McCurdy and Conces declarations. Memo. 12-13. As these declarations cannot be credited, the injunctive relief claims are not moot. Here, Plaintiff is hardly in a position to rely on Defendant's purportedly irreversible decision to cease using erythritol. *See Davidson v. Kimberley-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). To be blunt, Reed's has already admitted to making false statements to its customers. Why not again?

-11-

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

### E.    Plaintiff Should be Granted Discovery.

Finally, *even if* the Court were to decide to accept and consider the contradicting post-hoc declarations, dismissal would still be an abuse of discretion. Rather, the proper procedure is to convert this motion to one for summary judgment and allow discovery on the issues raised by Plaintiff's Complaint and the Defendant's declarations.

Importantly, a motion to dismiss is not automatically converted into a motion for summary judgment "whenever matters outside the pleading happen to be filed with the court and not expressly rejected by the court." *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 582 (9th Cir. 1983). When a defendant makes a factual jurisdictional attack under Rule 12(b)(1), the court generally should "permit discovery before allowing the plaintiff to demonstrate the requisite jurisdictional facts." *HRPT Props. Tr. v. Lingle*, 676 F.Supp.2d 1036, 1041 (D. Haw. 2009) (citing *St. Clair v. City of Chico,* 880 F.2d 199, 200–202 (9th Cir. 1989)). It clearly should do so here, where Defendant's declarations contradict federally mandated labeling representations; there has been no showing that the claim is frivolous or immaterial; the jurisdictional and substantive issues are inextricably intertwined; and the declarations do not even establish the assumption on which Defendant's motion relies. *See, e.g., Century Sur. Co. v. Master Design Drywall, Inc.,* No. 09CV0280-LAB (AJB), 2009 WL 3425326, at *2 (S.D. Cal. 2009) (under Rule 56(f), there "must be a meaningful opportunity for discovery before the Court will convert a motion to dismiss into a motion for summary judgment and rule on it").

This requirement comes directly from the seminal case in this area, *Safe Air*. Though the district court there converted the motion into one for summary judgment and ultimately found for the defendant, it only did so after "an evidentiary hearing" at which "the testimony of twenty-three witnesses was given

-12-

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

subject to cross examination." *Safe Air*, 373 F.3d at 1038. Indeed, the *Safe Air* decision spends nearly four pages describing the documentary and testimonial evidence on which summary judgment was granted. *Id*. at 1043-47. DeHerrera deserves the same opportunity.

*     *     *     *     *

Before this suit was filed, when making labeling representations under the threat of civil and criminal penalties, Reed's asserted that its Products contain erythritol. After this lawsuit was filed—and it became beneficial to disclaim the use of erythritol—Reed's is content to admit to a Rube Goldberg-like scheme to violate the FDCA and sell misbranded ginger ale, so long as it evades liability in this case.

Given the massive factual and legal problems with this scheme, it is simply impossible for this Court to conclude that Reed's has shown that Plaintiff's allegations are frivolous. As such, "dismissal under Rule 12(b)(1) [would be] error." *Safe Air*, 373 F.3d at 1040 (citing *Sun Valley,* 711 F.2d at 139).[3]

## II.     PLAINTIFF HAS PLAUSIBLY ALLEGED THAT ARTIFICIAL CITRIC ACID IS USED IN THE PRODUCTS AS A PRESERVATIVE.

Then, Reed's argues that DeHerrera's allegations relating to the use of artificial citric acid must be dismissed for failure to state a claim because Plaintiff has not plausibly alleged that the ingredient is artificial or is used as a preservative. Memo. 12-18. Every argument Reed's makes has been squarely rejected by districts courts throughout this state.

Reed's argument improperly conflates regulatory permissibility with consumer deception. The question is not whether citric acid may lawfully be used

---

[3] Reed's acknowledges that its request to stay or dismiss this case under the first-to-file rule depends solely on dismissal of DeHerrera's claims relating to erythritol. Memo. 18-20. Because these erythritol claims cannot be dismissed, Defendant's request to dismiss under the first-to-file rule must also be denied.

-13-

in food, but whether reasonable consumers understand industrially produced citric acid—manufactured through fermentation and chemical processing—to be "natural."

### A. Plaintiff's Citric Acid Allegations Are Product-Specific and Adequately Supported.

First, Reed's asserts that the Complaint must be dismissed because its "citric acid theory rests on … generalized assertion[s]" and "does not allege product-specific facts about Reed's actual citric acid supplier, the process used to produce the citric acid in the Products Plaintiff purchased, or the chemical composition of the finished ingredient." Memo. 12. This conclusory assertion is supported by not one citation to the actual allegations of the Complaint. That's because those allegations do not support Defendant's argument.

Numerous defendants have sought dismissal by arguing that plaintffs "fail[] to sufficiently allege that the citric acid used in the subject products is actually artificial." *Carbine*, 2025 WL 501829, at *3. But courts consistently find that defendants are "attempt[ing] to impose too stringent of a standard upon Plaintiff." *Id*. Plaintiffs in these cases "begin[] by alleging that the citric acid used in the products is produced using heavy chemical processing." *Id*. They then allege that virtually all citric acid used in commercial foods is produced using this method. *Id*. "Following this chain of reasoning, the allegation is fundamentally that Defendant manufactures citric acid, making it very likely that Defendant utilizes" the artificial ingredients and heavy chemical processing the complaints describe. *Id*.

That is, in these citric acid cases, "Plaintiff does not merely say that the labels are misleading because the products contain artificial preservatives—Plaintiff goes several steps further in alleging the specific preservative that is artificial, the chemical process that renders it artificial, its use in Defendant's

-14-

products, and its prevalence in the food industry more broadly." *Id*. at \*4. Such claims plausibly allege "a sufficient link between manufactured citric acid and Defendant's products." *Id*. In *Carbine* and numerous other cases in California courts, allegations of this kind survived a motion to dismiss without the testing that Reed's insists is necessary—including one just last month. *See Cortez v. Post Consumer Brands, LLC*, No. 2:25-CV-02321-DJC-JDP, 2026 WL 657631, at \*7 (E.D. Cal. Mar. 9, 2026).[4]

DeHerrera's allegations are identical to the allegations in these citric acid cases. That is, she "does not merely say that the labels are misleading because the products contain artificial preservatives—Plaintiff goes several steps further in alleging the specific preservative that is artificial" (*see* Compl. ¶ 16); "the chemical process that renders it artificial" (*id*. ¶¶ 20-23); "its use in Defendant's products" (*id*. ¶ 25); and "its prevalence in the food industry more broadly" (*id*. ¶¶ 18-19). *Carbine*, 2025 WL 501829 at \*4. None of these cases allege testing, because testing is not a requirement to bring plausible allegations of misbranding. *See, e.g.*, *Durnford v. MusclePharm Corp*., 907 F.3d 595, 603 n.8 (9th Cir. 2018) ("[P]laintiffs are generally not expected to provide evidence in support of their claims at the pleading stage, nor are they required to plead the 'probability' of their entitlement to relief.") (quoting, *inter alia, Iqbal*, 556 U.S. at 678). As in the other citric acid cases cited above, DeHerrera has "'satisf[ied] the pleading standard' by 'draw[ing] a connection between the common industry practice and the actual practice used by" Defendant. *Carbine*, 2025 WL 501829 at \*4 (quoting *Tarzian v. Kraft*, No. 18 C 7148, 2019 WL 5064732 (N.D. Ill. 2019)).

---

[4] For cases denying motions to dismiss substantively identical allegations, *see also, e.g.*, *Ringler v. J.M. Smucker Co*., 783 F. Supp. 3d 1229, 1239 (C.D. Cal. 2025); *Taylor v. Walmart, Inc*., 789 F. Supp. 3d 774, 785 (C.D. Cal. 2025); *Squeo v. Campbell Soup Co.,* No. 24-CV-02235-SVK, 2024 WL 4557680, at \*4 (N.D. Cal. 2024); *Fried v. Snapple Beverage Corp.*, No. 24-cv-653-DMS-DDL, 2024 WL 4479877 (S.D. Cal. 2024).

-15-

This Court should reach the same result as in *Carbine* and the other cases cited, and find that these allegations are plausibly pleaded.

**B.      The USDA and FDA Regulations Reed's Cites to Do Not "Establish" Anything About the Products.**

Then, Reed's points to various USDA or FDA materials that, it asserts, establish that Plaintiff's "falsity theory crosses the line from plausible to argumentative." Memo. 14-15. But none of the regulatory materials Reed's points to actually establish that citric acid in the form Plaintiff plausibly alleges is used in the Products is "natural."

For example, 7 C.F.R. § 205.605(a)(1) lists various "nonsynthetics" that can be included in foods labeled organic, including citric acid "produced by microbial fermentation of carbohydrate substances." But Defendant's assertion that this regulation "uses 'nonsynthetic' as a synonym for 'natural'" (Memo. 14) is supported by nothing other than counsel's assertion, which is not evidence.

And as the very next regulation cited by Reed's makes clear, "microbial fermentation" is ___*not*___ the manufacturing process that Plaintiff alleges. Reed's argues that 21 C.F.R. § 184.1033(a) describes citric acid as "'a naturally occurring constituent of plant and animal tissues' produced through 'mycological fermentation.'" Memo. 14. This is a blatant misstatement of the regulation, which first describes citric acid as "naturally occurring" but then describes three different ways it is made: natural extraction, mycological fermentation, and the *A. niger* method alleged by Plaintiff. *See* 21 C.F.R. § 184.1033(a); Compl. ¶ 23. Citric acid derived from this method is "not a type of common salt, sugar, vinegar, spice, or oil extracted from spices," and "is therefore a chemical substance." *Id*.

As another court noted in rejecting a defendant's reliance on these regulations, Defendant's argument "ignores Plaintiff's allegations—Plaintiff alleges that citric acid may be naturally occurring or may be manufactured."

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

*Carbine*, 2025 WL 501829, at \*4. DeHerrera does not "take issue with the FDA's or USDA's characterizations of citric acid as being "natural" ***in certain circumstances not present here***." *Id*. (emphasis in original). But the fact that "a reasonable consumer would not expect artificial preservatives in an 'organic' product strengthens Plaintiff's claim that the product labels carry important representations that consumers may rely on to their detriment, if it is indeed true that the citric acid here is artificial"—as DeHerrera plausibly alleges. *Id*.[5]

### C. Whether Citric Acid Functions As A Preservative Is a Fact Issue That Cannot Be Determined On the Pleadings.

Finally, Reed's argues that Plaintiff has not adequately alleged that the citric acid in the Products serves as a preservative, rather than some other function. Memo. 15-18. But as numerous courts in California have held, "whether citric acid actually functions as a preservative in [foods] is a question of fact unsuitable for resolution at the pleading stage." *Squeo,* 2024 WL 4557680, at \*6.

The Complaint squarely alleges that the Products are made with citric acid derived from the *A. niger* method (*see* Compl. ¶ 18), as is "[v]irtually all citric acid used in U.S. commercial food" (*id*. ¶ 19), and that "[t]he synthetic nature of citric acid made using this process has been repeatedly described in FDA Warning Letters and in other U.S. government and industry technical evaluations over the past several decades" (*id*. ¶ 24). Such allegations have been repeatedly—indeed, almost universally—held to be plausibly pleaded, including in the past two weeks. *See Vales v. Pierre Fabre Dermo-Cosmetique USA, Inc*., No. 25-CV-10523-BLF,

---

[5] Reed's also asserts in cursory fashion that "[a] reasonable consumer encountering 'Natural Ingredients' or 'Nothing Artificial' understands those statements to describe the finished product—not the upstream manufacturing history of every ingredient's precursors." Memo. 15. This is simply assertion of counsel, without a single citation in support. Whether representations are deceptive to the reasonable consumer is generally a fact intensive inquiry inappropriate for decision on a motion to dismiss. *See Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008).

-17-

2026 WL 974518, at \*4 (N.D. Cal. Apr. 10, 2026) ("The Court has no trouble rejecting Defendants' argument that it is not plausible to infer that citric acid acts as a preservative in the Products. This contention goes to the factual issues at the core of Plaintiff's claims.").[6]

The cases Reed's cites to the contrary are unavailing. First, in *Zuchowski v. SFC Global Supply Chain, Inc.*, No. 20-cv-10171-ALC, 2022 WL 3586716 (S.D.N.Y. 2022), the plaintiff alleged that certain ingredients acted as preservatives when included in frozen pizzas based on allegations that they acted as preservatives when included in breads and baked goods. *See id.* at \*3. But the court rejected this allegation because plaintiff failed to "explain how these ingredients operate as preservatives in ... frozen pizzas, as opposed to breads and baked goods." *See id.* Here, however, Plaintiff has alleged more broadly that citric acid functions as a preservative when added to food in general, as well as in this specific food. Compl. ¶ 25.

Then, in *Hu v. Herr Foods, Inc.*, 251 F.Supp.3d 813 (E.D. Pa. 2017), the court declined to accept the plaintiff's allegation because "it [wa]s unclear whether [he] ha[d] squarely alleged that citric acid does function as a preservative in the" products at issue. *See id.* at 821. DeHerrera does here. *See* Compl. ¶ 25.

## III. PLAINTIFF'S UCL, FAL, UNJUST ENRICHMENT, AND BREACH OF WARRANTY CLAIMS ARE ALSO PLAUSIBLY ALLEGED.

Reed's acknowledges that Plaintiff's claims under the UCL, FAL, and for breach of express warranty and unjust enrichment are based on the same factual allegations as her CLRA claims. Memo. 20. Because those statutory claims are

---

[6] *See also, e.g.*, *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2014 WL 1048640, at \*4 (N.D. Cal. 2014); *Ivie v. Kraft Foods Glob., Inc.*, No. 12-cv-02554-RMW, 2013 WL 685372, at \*10 (N.D. Cal. 2013); *Lozano v. Walmart, Inc.*, No. 23-cv-04500-SPG, 2024 WL 412606, at \*9 (C.D. Cal. 2024).

-18-

plausibly alleged, DeHerrera's other claims are as well. *See Carbine*, 2025 WL 501829 at *5.

## IV.   PLAINTIFF HAS ADEQUATELY ALLEGED ENTITLEMENT TO EQUITABLE RESTITUTION.

Finally, Reed's moves to dismiss Plaintiff's claim for equitable restitution, asserting that she has failed to demonstrate inadequate remedies at law. Memo. 20-21. Reed's entirely misreads *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020), and ignores multiple on-point cases from courts throughout this Circuit.

### A.   *Sonner* Does Not Address Pleading Burdens Or Preclude Alternative Pleading of Inadequate Legal Remedies.

First, Reed's simply misreads *Sonner*, which does not prohibit pleading inadequate legal remedies in the alternative. There is "no basis in California or federal law for prohibiting the [Plaintiff] from pursuing [her] equitable claims in the alternative to legal remedies at the pleadings stage." *Lomeli v. Jackson Hewitt, Inc.*, No. 2:17-CV-02899-ODW, 2018 WL 1010268, at *7 (C.D. Cal. 2018). "*Sonner* does not require Plaintiffs to 'demonstrate' anything at the pleadings stage." *Murphy v. Olly Pub. Benefit Corp.,* 651 F.Supp.3d 1111, 1129 (N.D. Cal. 2023). The actual holding of *Sonner* is that a plaintiff "must *establish* that she lacks an adequate remedy at law before *securing*" equitable relief under the UCL and CLRA. 971 F.3d at 844 (emphasis added). But "*Sonner* does not address what a plaintiff must allege at the pleading stage in order to proceed on their equitable claims." *Meltzer v. Mazda Motor Co. of Am., Inc.*, 779 F.Supp.3d 1120, 1135 (C.D. Cal. 2025).

*Sonner* thus "cannot be read as reversing a clearly established circuit practice allowing plaintiffs to plead in the alternative at the earliest stages of litigation." *Haas v. Travelex Ins. Servs. Inc.*, 555 F.Supp.3d 970, 980 (C.D. Cal. 2021). "To read *Sonner* to preclude Plaintiff from pleading an equitable remedy in

-19-

the alternative would therefore put it in conflict with the plain language of [Federal Rule of Civil Procedure] 8," which permits pleading inconsistent theories in the alternative. *Scheibe v. Fit Foods Dist., Inc.*, No.: 23-CV-220 JLS (AHG), 2023 WL 7434964, at *9 (S.D. Cal. 2023). Consistent with this clearly established practice, even after *Sonner*, courts have held that there is "no bar to the pursuit of alternative remedies at the pleadings stage." *Johnson-Jack v. Health-Ade LLC*, 587 F.Supp.3d 957, 976 (N.D. Cal. 2022) (collecting cases).

Finally, Reed's cites in support to *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308 (9th Cir. 2022). Memo. 20. But *Guzman* held only that "an adequate remedy at law is not made inadequate because it was not timely pursued by a plaintiff," and in that respect is "a straightforward application of *Sonner*." *Chebul v. Tuft & Needle, LLC*, No. 2:24-CV-02707-JLS-MAR, 2024 WL 5257021, at *4 (C.D. Cal. 2024).

That is, the Ninth Circuit held that because the plaintiff in *Guzman* neglected to pursue a CLRA damages claim, he could not then argue his legal remedies were inadequate after the statute of limitations on his foregone CLRA claim had run. *See Guzman*, 49 F.4th at 1312. As several district courts have noted, this case (decided on summary judgment, not on a motion to dismiss) "does not expressly answer the question that courts have confronted post-*Sonner*: What is required of plaintiffs at the pleading stage?" *Pitkin v. State Farm Gen. Ins. Co.*, No. 23-CV-00924-WHO, 2023 WL 11990316, at *5 (N.D. Cal. 2023).

That question is answered by the well-established practice permitting alternative pleading under Rule 8, which has been upheld by multiple district courts after both *Sonner* and *Guzman*: Where, as here, a plaintiff "has alleged specific facts showing that equitable restitution is 'more certain, prompt, or efficient'" than legal remedies, "that is enough to support Plaintiff's request for equitable restitution at this stage." *Chebul*, 2024 WL 5257021 at *4.

-20-

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

**B.    Plaintiff Has Adequately Pleaded the Factual Bases for Equitable Restitution.**

Then, Reed's attempts to recast Plaintiff's complaint as pleading legal conclusions, and "only conclusory recitations of inadequacy." Memo. 20. But the Supreme Court has held that "[a] remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient." *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937). Following this principle, courts in this Circuit have repeatedly denied motions to dismiss where the complaint alleges in the alternative that legal remedies may not be as prompt and efficient.

For example, just two months ago a court in this district denied a motion to dismiss where the plaintiff alleged that a "CLRA claim encompasses 'only particular categories of deceptive conduct,' while unjust enrichment is "broad[er],'" while the plaintiff's common law claims "require additional showings," including "'that the statements he challenges constitute a warranty and that the warranty was the basis of the bargain.'" *Shahinian*, 2026 WL 413583, at *2. These allegations—which track exactly those made by DeHerrera here, *see* Compl. ¶ 34—were "sufficient, at this stage, to set forth facts under which Plaintiff lacks an adequate remedy at law because his request for equitable restitution is more certain." *Id. See also Coleman v. Mondelez Int'l Inc.*, 554 F.Supp.3d 1055, 1065 (C.D. Cal. 2021) (sufficient for plaintiff to allege that she "'may be entitled to restitution under the UCL, while not entitled to damages under other causes of action,' which may impose more stringent elements that plaintiff may ultimately not be able to prove").

Then, DeHerrera has alleged—as the plaintiffs did in *Murphy*—that "[t]o obtain a full refund as damages, Plaintiff must show that the Products they received have essentially no market value," but "can seek restitution without making this showing." Compl. ¶ 32. *Compare to Murphy, supra* (adequate for plaintiffs to

allege that "for a full refund, Plaintiff[] would have to show that the product has no market value, while that showing is not required for restitution").

And finally, DeHerrera has alleged that "the remedies at law available to [her] are not equally prompt or otherwise efficient" as restitution. Compl. ¶ 35. *Compare to Murphy, supra* (finding that it is "adequate to allege that restitution 'would be more certain, prompt, or efficient than the legal remedies they request.'") (citation omitted).

Allegations of this kind are "sufficient" at this stage of a proceeding (*see Murphy*, *supra*) because "[t]his Court, together with the majority of courts in this district, understands *Sonner* to require far less at the pleading stage" than the detailed and particularized factual showing Reed's demands. *In re Natera Prenatal Testing Litig.*, 664 F.Supp.3d 995, 1012 (N.D. Cal. 2023). *See also Meltzer*, 779 F.Supp.3d at 1135 (same).

In the Complaint, Plaintiff has alleged in the alternative that she lacks an adequate remedy at law. *See* Compl. ¶¶ 31-35. These allegations, like any, will need to be tested by discovery. But on a Rule 12 motion, it is "premature to determine as a *matter of law* the plaintiff ha[s] an adequate remedy at law." *Belyea v. GreenSky, Inc.*, No. 3:20-CV-01693-JSC, 2023 WL 8701311, at *7 (N.D. Cal. 2023) (emphasis in original). *See also Murphy,* 651 F.Supp.3d at 1129.

## CONCLUSION

Considering the foregoing, Reed's motion to dismiss should be denied. Alternatively, Plaintiff should be granted leave to amend. *See Eminence Capital,* 316 F.3d at 1051.

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

Respectfully submitted,

Dated: April 24, 2026                    CHARLES C. WELLER, APC


By:  */s/ Charles C. Weller*
     Charles C. Weller

     *Attorney for Plaintiff*

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT

## CERTIFICATION AS PER L.R. 11-6.2

The undersigned, counsel of record for Plaintiff, certifies on this date April 24, 2026, that this brief contains 6,758 words, which complies with the word limit set in the Court's Civil Standing Order.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this date, April 24, 2026, I caused the foregoing to be filed into the docket of this matter via the Clerk of Court's CM/ECF system, which filing caused service to be made on all counsel of record.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller
Attorney for Plaintiff

-24-

OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT